## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02477

MORGAN BUFFINGTON, individually and on behalf of all others similarly situated,
     Plaintiff,

v.

OVINTIV USA INC. and NEWFIELD EXPLORATION COMPANY,

     Defendants.

### ORIGINAL COLLECTIVE ACTION COMPLAINT

1.    Plaintiff Morgan Buffington ("Buffington") brings this lawsuit to recover unpaid overtime wages and other damages from Defendants Ovintiv USA Inc. and Newfield Exploration Company (collectively "Ovintiv") under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

2.    Ovintiv uses safety advisors, like Buffington, to carry out its work.

3.    Buffington, and the other workers like him, typically worked 12 hour shifts and regularly worked more than 80 hours per week.

4.    But Ovintiv did not pay all of these workers overtime for hours worked in excess of 40 hours in a single workweek.

5.    Instead of paying overtime as required by the FLSA, Ovintiv paid these workers a day-rate and improperly classified them as independent contractors.

6.    This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION & VENUE

7.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Ovintiv is

headquartered in this District.

**PARTIES**

9.      From approximately October 2016 until December 2019, Buffington worked for Ovintiv

as a Safety Advisor. Throughout his work with Ovintiv, he was paid a day-rate with no overtime

compensation. His consents to be a party Plaintiff are attached as Exhibit A and Exhibit B.

10.     Buffington brings this action on behalf of himself and other similarly situated workers

who were paid by Ovintiv's day-rate system.

11.     Ovintiv paid each of these workers a flat amount for each day worked and failed to pay

them overtime for hours worked in excess of 40 hours in a workweek.

12.     The class of similarly situated workers sought to be certified as a collective action under

the FLSA is defined as:

> **All safety advisors who worked for, or on behalf of, Newfield Exploration Company, Encana Oil & Gas (USA) Inc.,[1] or Ovintiv USA Inc. during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime.**
> (the "Putative Class Members").

13.     Buffington seeks conditional and final certification of this FLSA collective action under

29 U.S.C. § 216(b).

14.     Newfield Exploration Company may be served at 363 N. Sam Houston Pkwy E., Suite

2020, Houston, Texas 77060.

15.     Ovintiv USA, Inc. may be served through its registered agent for process, Corporation

Service Company, at 370 17th Street, Suite 1700, Denver, CO 80202.

---

[1] Encana is the predecessor corporate entity of Ovintiv. *See* https://investor.ovintiv.com/2020-01-14-Encana-Receives-Securityholder-Approval-for-Reorganization (last visited August 5, 2020)

## COVERAGE UNDER THE FLSA

16.     In 2019, Newfield Exploration Company merged with Encana Corporation, a Canadian company.[2] In 2020, Encana Corporation moved its corporate domicile from Canada to the United States and rebranded itself as Ovintiv USA Inc.[3]

17.     For at least the past decade, Ovintiv has consistently employed hundreds of workers in the United States.

18.     At all times hereinafter mentioned, Ovintiv has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19.     At all times hereinafter mentioned, Ovintiv has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20.     At all times hereinafter mentioned, Ovintiv has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

21.     Buffington and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

22.     Ovintiv's misclassification of Buffington and the Putative Class Members as independent contractors does not alter its status as an employer for purposes of the FLSA.

---

[2] https://investor.ovintiv.com/news-releases?item=40 (last visited August 5, 2020)
[3] https://investor.ovintiv.com/2020-01-14-Encana-Receives-Securityholder-Approval-for-Reorganization (last visited August 5, 2020)

### FACTS

23.     Ovintiv is a large oil and gas exploration company operating throughout the United States and headquartered in Colorado.

24.     In order to make the goods and provide the services it markets to its customers, Ovintiv employs safety advisor like Buffington and the Putative Class Members.

25.     Safety advisors are an integral part of Ovintiv's business operations.

26.     Being a safety advisor is not work requiring specialized academic training as a standard prerequisite.

27.     To the extent the Putative Class Members make "decisions," the decisions do not require the exercise of independent discretion and judgment.

28.     Instead, Ovintiv's safety advisors apply well-established techniques and procedures.

29.     Safety advisors are not permitted to deviate from established quality standards.

30.     These safety advisors are blue collar workers. They rely on their hands, physical skills, and energy to perform manual labor in the field.

31.     With these job duties, these safety advisors are clearly **non-exempt** under the FLSA.

32.     Ovintiv paid Buffington and the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

33.     Buffington worked for Ovintiv from approximately October 2016 until December 2019 as a Safety Advisor.

34.     Buffington would conduct his day to day activities within designated parameters and in accordance with a predetermined construction or well plan.

35.     Buffington was paid on a day-rate basis throughout his employment with Ovintiv.

36.     Buffington and the Putative Class Members were not paid a salary.

37. Ovintiv typically scheduled Buffington to work 12 hour shifts, for 7 days a week, for weeks on end.

38. During each year of his employment, Buffington regularly worked well in excess of 40 hours in a workweek.

39. But Ovintiv did not pay Buffington overtime.

40. The work Buffington performed was an essential part of producing Ovintiv's core products and/or services.

41. During Buffington' employment with Ovintiv, Ovintiv exercised control over all aspects of Buffington' job.

42. Buffington did not make any substantial investment in order to perform the work Ovintiv required of him.

43. Ovintiv determined Buffington' opportunity for profit and loss.

44. Buffington's earning opportunity was based on the number of days Ovintiv scheduled him to work.

45. Buffington was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in the same job position) to perform his job duties.

46. Buffington was not employed by Ovintiv on a project-by-project basis, but rather on a consistent basis.

47. While Buffington was classified as an independent contractor, he was regularly on call for Ovintiv and was expected to drop everything and work whenever needed.

48. Ovintiv controlled all the significant or meaningful aspects of the job duties performed by Buffington.

49. Ovintiv controlled the hours and locations Buffington worked, the tools he used, and the rates of pay he received.

50.     Even when Buffington worked away from Ovintiv's offices without the presence of a direct Ovintiv supervisor, Ovintiv still controlled all aspects of Buffington' job activities by enforcing mandatory compliance with Ovintiv's policies and procedures.

51.     More often than not, Buffington utilized equipment provided by Ovintiv to perform his job duties.

52.     Buffington did not provide the equipment he worked with on a daily basis.

53.     Ovintiv made the large capital investments in buildings, machines, equipment, tools, and supplies in the business that Buffington worked in.

54.     Buffington did not incur operating expenses like rent, payroll, marketing, and insurance.

55.     Buffington was economically dependent on Ovintiv during his employment.

56.     Ovintiv set Buffington's rates of pay, his work schedule, and prohibited him (formally or practically) from working other jobs for other companies while they were working on jobs for Ovintiv.

57.      Very little skill, training, or initiative, in terms of independent business initiative, was required of Buffington to perform his job duties.

58.     Indeed, the daily and weekly activities of Buffington and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created or mandated by Ovintiv.

59.     Virtually every job function performed by Buffington and the Putative Class Members was pre-determined by Ovintiv, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

60.     Buffington and the Putative Class Members were generally prohibited from varying their job duties outside of the pre-determined parameters.

61.     Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to monitoring, inspecting, and collaborating with other Ovintiv employees regarding the safety of operations in the field.

62.     Buffington performed routine manual and technical job duties that were largely dictated by Ovintiv.

63.     All of the Putative Class Members perform the similar job duties and are subjected to the similar policies and procedures which dictate the day-to-day activities performed by each person.

64.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

65.     The Putative Class Members regularly worked in excess of 40 hours each week.

66.     Like Buffington, the Putative Class Members were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

67.     Ovintiv did not pay Buffington on a salary basis.

68.     Ovintiv did not pay the Putative Class Members on a salary basis.

69.     Ovintiv paid Buffington on a day-rate basis.

70.     Ovintiv paid the Putative Class Members on a day-rate basis.

71.     Ovintiv failed to pay Buffington overtime for hours worked in excess of 40 hours in a single workweek.

72.     Ovintiv failed to pay the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

73.     Ovintiv knew, or acted with reckless disregard for whether, Buffington and the Putative Class Members were misclassified as independent contractors.

74.     Ovintiv classifies other workers who perform substantially similar work, under similar conditions, as employees.

- 7 -

75.     Ovintiv's policy of failing to pay Buffington and the Putative Class Members overtime violates the FLSA because these workers are, for the purposes of the FLSA, employees.

76.     Ovintiv's day-rate system violates the FLSA because Buffington and the other day-rate workers classified as independent contractors did not receive any pay for hours worked over 40 hours each week.

77.     Because Buffington and the Putative Class Members were misclassified as independent contractors by Ovintiv, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

78.     Buffington and the Class Members worked for Ovintiv as employees over the past three years across the United States.

79.     As a result of Ovintiv's pay policies, Buffington and the Class Members were denied the overtime pay required by federal law.

80.     Ovintiv keeps accurate records of the hours, or at least days, its safety advisors work.

81.     It also keeps accurate records of the amount of pay its safety advisors receive.

82.     Despite knowing the FLSA requirements and that its safety advisors regularly worked more than 40 hours in a workweek, Ovintiv does not pay them overtime.

## FLSA VIOLATIONS

83.     Buffington incorporates the preceding paragraphs by reference.

84.     As set forth herein, Ovintiv violated the FLSA by failing to pay Buffington and the Putative Class Members overtime at one and one-half times the regular rate of pay under the hourly system, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

85.     At all relevant times, Ovintiv has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

86.     Ovintiv employed Buffington and each member of the Class.

87.     Ovintiv's pay policy denied Buffington and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

88.     Ovintiv owes Buffington and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

89.     Ovintiv knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Buffington and the Putative Class Members is willful.

90.     Due to Ovintiv's FLSA violations, Buffington and the Putative Class Members are entitled to recover from Ovintiv for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

91.     The improper pay practices at issue were part of a continuing course of conduct, entitling Buffington and Putative Class Members to recover for all such violations, regardless of the date they occurred.

### COLLECTIVE ACTION ALLEGATIONS

92.     The illegal pay practices Ovintiv imposed on Buffington were likewise imposed on the Putative Class Members.

93.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

94.     Numerous other individuals who worked with Buffington were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

95.     Based on his experiences and tenure with Ovintiv, Buffington is aware that Ovintiv's illegal practices were imposed on other Putative Class Members.

96.     The Putative Class Members were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

97.     Ovintiv's failure to pay overtime at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

98.     Buffington' experiences are therefore typical of the experiences of the Putative Class Members.

99.     The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

100.    Buffington has no interest contrary to, or in conflict with, the Putative Class Members.

101.    Like each Putative Class Member, Buffington has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

102.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

103.    Absent a collective action, many members of the Putative Class Members will not obtain redress of their injuries and Ovintiv will reap the unjust benefits of violating the FLSA.

104.    Furthermore, even if some of the Putative Class Members could afford individual litigation against Ovintiv, it would be unduly burdensome to the judicial system.

105.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

106.    The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

     a.     Whether Ovintiv employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA;

     b.     Whether the Putative Class Members were improperly misclassified as independent contractors;

c.       Whether Ovintiv's decision to classify the members of the Class as independent contractors was made in good faith;

d.       Whether Ovintiv's decision to not pay time and a half for overtime to the members of the Putative Class was made in good faith;

e.       Whether Ovintiv's violation of the FLSA was willful; and

f.       Whether Ovintiv's illegal pay practices were applied to the Putative Class Members.

107.    Buffington and the Putative Class Members sustained damages arising out of Ovintiv's illegal and uniform employment policy.

108.    Buffington knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

109.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

110.    Buffington demands a trial by jury.

## RELIEF SOUGHT

111.    WHEREFORE, Buffington prays for judgment against Ovintiv as follows:

a.       An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.       For an Order appointing Buffington and his counsel to represent the interests of the FLSA Class;

c.       For an Order finding Ovintiv liable to Buffington and the Putative Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d.       For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Michael A. Josephson
      Michael A. Josephson
      Texas Bar No. 24014780
      mjosephson@mybackwages.com
      Andrew W. Dunlap
      Texas Bar No. 24078444
      adunlap@mybackwages.com
      **JOSEPHSON DUNLAP**
      11 Greenway Plaza, Suite 3050
      Houston, Texas 77046
      713-352-1100 – Telephone
      713-352-3300 – Facsimile

      Richard J. (Rex) Burch
      Texas Bar No. 24001807
      **BRUCKNER BURCH, P.L.L.C.**
      8 Greenway Plaza, Suite 1500
      Houston, Texas 77046
      713-877-8788 – Telephone
      713-877-8065 – Facsimile
      rburch@brucknerburch.com

      **ATTORNEYS IN CHARGE FOR PLAINTIFFS**