# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
## Senior Judge Raymond P. Moore

Civil Action No. 20-cv-02477-RM-STV

MORGAN BUFFINGTON, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

OVINTIV USA, INC., and
NEWFIELD EXPLORATION COMANY,

    Defendants.

---

## ORDER
---

This matter is before the Court on the Parties' Renewed Motion to Approve Settlement Agreement (ECF No. 86) and their Joint Motion to File Settlement Agreement Under Seal (ECF No. 87). Upon consideration of the motions, the court record, and the applicable rules and case law, and being otherwise fully advised, the Renewed Motion to Approve Settlement Agreement is GRANTED and the Joint Motion to File Settlement Agreement Under Seal is GRANTED IN PART.

### I. BACKGROUND

The Court laid out the background of this case in its prior Order denying the Joint Motion to Approve Settlement Agreement without prejudice. (ECF No. 85.) The Court will therefore not repeat all that background here. The Court notes that the named Plaintiff, Morgan Buffington, appears on behalf of himself and others who served as Safety Advisors or other "safety consultants" for Defendant, Ovintiv USA Inc. and its predecessor companies, all of which are and

were oil and gas exploration companies. (ECF No. 1.) Plaintiff brought this case as a collective action under the Fair Labor Standards Act ("FLSA"), alleging that Defendant failed to pay him and the other members of the collective for overtime hours worked in excess of 40 hours in a week. (Id.) The Court granted conditional certification of the collective action pursuant to the FLSA and approved the Parties' notice documents. (ECF Nos. 38, 41.) After notice was distributed, eleven additional individuals joined the collective as opt-in plaintiffs. (ECF Nos. 5, 6, 20, 45, 46, 47.)

The Parties subsequently filed a Joint Motion to Approve Settlement Agreement (ECF No. 81.) This Court denied that Motion without prejudice, noting that the Joint Motion failed to demonstrate that the opt-in plaintiffs had been given notice of the approved settlement and an opportunity to object to the terms of the settlement. (ECF No. 85.) The Court also explained that the Parties had not provided the information necessary for it to evaluate the reasonableness of the attorneys fees requested. (Id.)

Following the Court's denial without prejudice, the Parties filed the present Renewed Motion to Approve Settlement Agreement. (ECF No. 86.) In the Renewed Motion the Parties have rectified all of the previous shortcomings and the Court will analyze the information that has now been provided.

## II. LEGAL STANDARD AND APPLICATION

### A. Collective Action Settlement

Courts have held that settlements of FLSA actions such as this one must or may require court approval.[1] *Cooper v. OFS 2 Deal 2, LLC*, No. 15-cv-01291-RM-NYW, 2016 WL 1071002, at *2 (D. Colo. Mar. 17, 2016); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d

---

[1] The issue of whether an FLSA settlement requires court approval has not yet been settled by the Tenth Circuit. The Court also recognizes the decisions in this District are not uniform regarding any requirements for approval of settlement agreements brought under the FLSA.

1350, 1353 (11th Cir. 1982); *Baker v. Vail Resorts Mgmt. Co.,* Case No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014).  Approval may be granted when: (1) the FLSA settlement is reached as a result of bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of attorneys' fees.  *Cooper*, 2016 WL 1071002, at *2; *Lynn's Food Stores*, 679 F.2d at 1354; *Baker*, 2014 WL 700096, at *1.  In addition, the "Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power."  *Baker*, 2014 WL 700096 at *2.  To determine whether a settlement agreement complies with the FLSA, the court evaluates the following factors: "(1) the presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA."  *Baker*, 2014 WL 700096 at *2 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

    **B.  Attorney's Fees under the FLSA**

The FLSA requires any judgment to include an award of reasonable attorney's fees and the costs of the action.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").  The Court has discretion to determine the amount and reasonableness of the fee to be awarded.  *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173 (D. Colo. 2018).

The two primary methods for determining attorney-fee awards in common-fund cases are the percentage-of-the-fund method and the lodestar method.  *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017) (discussing

fee awards in class actions). The Tenth Circuit has expressed a preference for the percentage-of-the-fund approach in common fund cases. *Id.* To determine the appropriate percentage, the Tenth Circuit considers the twelve factors first announced in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974) (commonly called the *Johnson* factors). Those factors are:

> [1] the time and labor required, [2] the novelty and difficulty of the question presented by the case, [3] the skill requisite to perform the legal service properly, [4] the preclusion of other employment by the attorneys due to acceptance of the case, [5] the customary fee, [6] whether the fee is fixed or contingent, [7] any time limitations imposed by the client or the circumstances, [8] the amount involved and the results obtained, [9] the experience, reputation and ability of the attorneys, [10] the "undesirability" of the case, [11] the nature and length of the professional relationship with the client, and [12] awards in similar cases.

*Chieftain Royalty Co.*, 888 F.3d at 458 (quoting *Gottlieb v. Barry*, 43 F.3d 474, 482 n.4 (10th Cir. 1994)).

### III. APPLICATION

#### A. Collective Action Settlement

The Court considers the pertinent factors in turn.

##### 1. Bona Fide Dispute

The record supports that a bona fide dispute exists between the Parties as to liability and damages on Plaintiffs' claims based on Defendant's alleged actions. The nature of the dispute is clearly presented, and each side has presented justification for its position regarding the Plaintiffs' entitlement, or lack of entitlement, to overtime payments. It is clear from the record that a resolution of this case would require significant litigation and both sides would run financial risks by continuing to prosecute this case. The Court therefore concludes that a bona fide dispute exists. *See Davis*, 292 F.Supp.3d at 1172 (analyzing this factor).

### 2. Fair and Reasonable

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Baker*, 2014 WL 700096, at *2. The Court considers several factors when evaluating the fairness of a settlement, including:

> (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Id.* (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)); *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (evaluating fairness of agreement under Fed. R. Civ. P. 23(e)(1)(C)). The Parties assert that, in this case, these factors demonstrate that the Settlement is fair and reasonable, and the Court agrees.

The Court concludes that the Settlement was fairly and honestly negotiated after almost four years of litigation. The Settlement was negotiated by experienced counsel, and there is no evidence that the Settlement was anything other than the result of arm's-length negotiations. In addition, significant questions of law remain as to whether the Plaintiffs are entitled to payment for overtime in light of Defendant's position that Plaintiffs were properly classified as independent contractors, which places the ultimate outcome of the case in doubt. As the Parties note, proceeding to trial in this case would likely lead to several years of additional litigation. This Settlement agreement provides the Plaintiffs with compensation now, without the need for lengthy litigation. Finally, the Parties themselves have concluded that this Settlement is fair, and "this Court should not substitute its own judgment for that of the parties." *Farley v. Family Dollar Stores, Inc.*, No. 12-cv-000325-RM-MJW, 2014 WL 5488897, *3 (D. Colo. Oct. 30, 2014). The Parties have notified the members of the collective action of the Settlement, and no

5

member has raised any objections. (ECF No. 86-2.) On this record, therefore, the Court concludes that the Settlement is fair and reasonable.

### 3. Whether the Proposed Settlement Undermines the Purposes of the FLSA

The record shows that no other similarly situated employees have sought to join this action, nor is there any evidence that Defendant's alleged failure to comply with the FLSA is part of a continuing violation or widespread conduct. *See Baker*, 2014 WL 700096, at *2. The Court concludes, therefore, that this Settlement is consistent with the purposes of the FLSA.

### B. Attorney Fees and Incentive Award

The Court next examines the reasonableness of the attorney fees and incentive award, which are each included in the Settlement. The total settlement amount is $110,000 and the attorney fee and costs award is set as $54,000. (ECF No. 88.) That works out to approximately 49% of the settlement total in attorney fees and costs. The Parties represent, however, that the amount being awarded for attorney fees is only 40% of the gross settlement. (ECF No. 86, pp.12-13.) In addition, in compensation for serving as the Lead, or Representative Plaintiff, the Settlement provides a $5,000 incentive aware for Buffington.

### 1. Attorney Fees

The Plaintiffs' attorneys represent that over the three and a half years that this case has been pending, they have participated in the exchange of voluminous written discovery including thousands of pages of documents and have prepared for 12 depositions. (ECF Nos. 86, 86-1.) They have also drafted and responded to a number of motions, including a motion for summary judgment, and participated in extensive negotiations with Defendant's counsel. (Id.) Counsel notes that they have handled FLSA cases in at least 27 states and have handled over 250 cases involving collective action claims for oilfield workers like those in this case. They point to

6

orders from other courts finding them to be "among the most experienced and best regarded in this specialized practice area," and that they "conduct[] themselves professionally, demonstrate[] deep knowledge of wage-and-hour law, and [are] diligent and responsive to the Court's orders." (Id. pp. 8-9.)

Forty percent of the total common fund is within the range the customary fee awards entered in similar cases in this District. *See, e.g. Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (concluding that 37% of the gross settlement amount is well within the normal range of a contingent fee award); *Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *2 (D. Colo. Mar. 9, 2000) ("Fees for class action settlements generally range from 20%-50%."); *see also Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*, No. CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

Plaintiffs' counsel took this case on a contingent fee basis and agreed, in advance, to cap their fees and costs at $54,000 which, counsel asserts, is far lower than the amount of fees accumulated over the course of this litigation, which "are well over $100,000." (ECF No. 86-1, pp.3-4.) Plaintiffs' counsel also achieved a high degree of success—under the settlement Plaintiffs will each receive approximately 90% of two years of back wages and 30% of three years of back wages. (ECF No. 86, p.13.)

Based on the foregoing, the Court concludes that the attorney fee award is reasonable in this case and that the costs incurred in this litigation should be awarded.

2. **Incentive Award**

The Settlement provides for a payment of $5000 to Buffington. That award recognizes the facts that he has been involved in this case since the inception, he has been instrumental in

building the case, and his agreement to bring this case as a collective action significantly delayed his own compensation. (ECF No. 86.)

"[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co.*, 888 F.3d at 468. According to Newberg on Class Actions, between 2006 and 2011, the median incentive award per plaintiff was $5,250 while the mean award per plaintiff was $11,697. 5 Newberg on Class Actions, § 17:8 (5th ed.). The Court concludes that, in this case, $5,000 reasonably compensates Buffington for his contributions to this litigation which, as previously noted, has already spanned over more than 3.5 years. Furthermore, no member of the collective action has objected to the payment. The Court therefore approves the incentive payment to Buffington.

### C. Motion to File Settlement Under Seal

With their Renewed Motion to Approve Settlement Agreement, the Parties also filed a Joint Motion to File Settlement Agreement Under Seal. (ECF No. 87.) As in their prior Motion, the Parties argue that "confidentiality was a key component of the Parties' settlement agreement." (ECF No. 87, p.3.) As explained in the Court's prior Order (ECF No. 85, p.7), however, "[t]he mere fact that a settlement agreement contains a confidentiality term is not, by itself, a sufficient reason to deny public access." *Ostrander v. Customer Eng'g Servs., LLC*, No. 15-CV-01476-PAB-MEH, 2018 WL 1152265, at *5 (D. Colo. Mar. 5, 2018). The Parties cite a number of cases, all concluding that "the presumption of public access and the FLSA's public purpose do not preclude filing a settlement agreement under seal." (ECF No. 87, p.3) The Court notes, however, that every case cited by the Parties for that proposition comes out of a Texas jurisdiction. (Id., pp.3-4.)

In the alternative, the Parties have requested that the settlement amounts and Plaintiffs' personal information be redacted from the Settlement Agreement. (Id., p.4.) Given the FLSA's public policy favoring access to such settlement agreements to "give notice to future plaintiffs of prior allegations of defendant's improper conduct," *Baker v. Vail Resorts Mgmt. Co.*, No. 13-CV-01649-PAB-CBS, 2014 WL 700096, at *2 (D. Colo. Feb. 24, 2014), the Court concludes that granting the public access to a redacted version of the Settlement Agreement strikes the proper balance. The full Settlement Agreement, currently filed under seal at docket number 88, will be maintained under Level 1 restriction. The Parties are instructed to file a new version of the Settlement Agreement, redacting the settlement amounts as well as all personal information regarding the Plaintiffs. That version of the Settlement Agreement will not be filed under seal and will be available to the public.

## IV.  CONCLUSION

Based on the foregoing, it is **ORDERED**:

(1) That the Renewed Motion to Approve Settlement Agreement (ECF No. 86) is GRANTED;

(2) That as Plaintiffs' claims arise in part under the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq., the executed Settlement Agreement has been reviewed by this Court and is hereby APPROVED;

(3) That the Joint Motion to File Settlement Agreement Under Seal (ECF No. 87) is GRANTED IN PART;

(4) That the Parties are ORDERED to file a redacted version of the Settlement Agreement by May 17, 2024;

(5) That the Court retains jurisdiction over the Settlement Agreement, including the consummation, performance, administration, effectuation, and enforcement of the Agreement as approved by this Order; and

(6) That after full payment, the Parties shall file a joint motion to dismiss with prejudice.

DATED this 13th day of May, 2024.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge