## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Confidential Settlement Agreement and Release of All Claims (**"Agreement"**) is made and entered into by Morgan Buffington (**"Representative Plaintiff"**), on behalf of himself and on behalf of all other Opt-in Plaintiffs who have filed their Consents to join this lawsuit (collectively **"Opt-in Plaintiffs"**) (collectively the **"Plaintiffs"**) on the one hand, and Defendants Ovintiv USA inc. and Newfield Exploration Company, Inc., (the **"Defendants"**) on the other hand. The Representative Plaintiff, Opt-in Plaintiffs, and the Defendants shall be referred to jointly as the **"Parties"** and singularly as a **"Party."**

**WHEREAS**, the Representative Plaintiff has brought a civil collective action against the Defendants, captioned, *Morgan Buffington, Individually and on Behalf of Others Similarly Situated v. Ovintiv USA Inc. and Newfield Exploration Company, Inc.*, No. 1:20-cv-02477-RM-STV, filed in United States District Court for the District of Colorado (the **"Lawsuit"**), alleging violations of the Fair Labor Standards Act (29 USC §§ 201 et. seq., hereinafter "FLSA");

**WHEREAS**, the Representative Plaintiff, through his counsels, Michael Josephson, Andrew Dunlap, and Richard Schreiber, Josephson Dunlap LLP, 11 Greenway Plaza, Suite 3050, and Richard Burch, Bruckner Burch PPLC, 8 Greenway Plaza, Suite 1500, filed claims asserted in the Lawsuit pursuant to 29 USC § 216(b) on behalf of himself and other persons;

**WHEREAS**, the Parties agree that there are bona fide disputes between them with respect to (a) the legal entitlement to the amounts claimed in the Lawsuit; and (b) the facts that are the basis for the allegations made in the Lawsuit;

**WHEREAS**, the Defendants deny that they have committed any wrongdoing or violated any state or federal law pertaining to the payment of wages and has defended the claims asserted in the Lawsuit;

**WHEREAS**, the Parties, in view of the costs, risks, and delays of continued litigation and appeals balanced against the benefits of settlement believe that the settlement as provided in this Agreement is in each of their best interests, and counsel for Plaintiffs specifically and separately agree that the settlement as provided in this Agreement is in the best interests of the Plaintiffs and is a fair, reasonable, and adequate resolution of the Lawsuit;

**WHEREAS**, the Parties desire and intend to seek Court approval of the settlement of the Lawsuit as set forth in Section 1 of this Agreement and to seek an entry of final dismissal from the Court, dismissing with prejudice the claims of the Plaintiffs as set forth herein;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements herein contained, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree to terminate past, present, and potential controversies between the Parties to the extent stated in greater detail below, and covenant and agree as follows:

1.     **Approval of Settlement:** All terms of this Agreement are contingent upon the approval of the Court, and this Agreement is entered into voluntarily by the Parties for settlement purposes only.

a.    The Parties agree to cooperate and present to the Court, if necessary, for its consideration in connection with the approval of the Agreement competent evidence as may be requested by the Court subject to the appropriate standards for approving a settlement under the FLSA.

b.    The Parties and their counsel will, contemporaneously with their execution of this Agreement, execute a Joint Motion for Final Approval of Settlement to be filed with the Court, seeking final approval of their proposed settlement, as set forth in this Agreement.  The Joint Motion for Final Approval of Settlement is attached as Exhibit A.

c.    The Parties agree that keeping the terms of this Agreement confidential is of utmost importance, and they agree to jointly seek the Court's approval to file this Agreement under seal.

2.    **Settlement Approval Procedure:** This Agreement will become final and effective upon occurrence of all of the following events:

a.    Entry of an Order by the Court authorizing this Agreement to be filed under seal;

b.    Entry of an Order by the Court granting approval of this settlement;

c.    Execution of this Agreement by the Representative Plaintiff, the Company, and their respective counsel of record;

d.    Entry of an Order dismissing the case with prejudice;

e.    The Company shall tender each Plaintiff the payment of the settlement sum (less required deductions as applicable) as specified in Exhibit B, and payment of as specified in Sections 4(a) and (b) below, to Plaintiffs' counsel, Josephson Dunlap LLP and Bruckner Burch PLLC, whose tax identification numbers are 82-5208727 for attorney's fees, costs and expenses of whatsoever nature.

3.    **Effect of Non-Approval:**  In the event that any of the conditions specified in this Agreement are not satisfied, or in the event that this Agreement does not obtain approval of the Court for any reason, all matters covered by the Agreement, shall, for all purposes, be null and void. In such event, nothing in this Agreement shall be used or construed by or against any Party as a determination, admission, or concession of any issue of law or fact in the Lawsuit and the Parties do not waive, and instead expressly reserve their respective and all rights with respect to the prosecution and defense of the Lawsuit as if the Agreement never existed. If voided, the Parties further agree to extend any necessary deadlines in the Lawsuit, or where necessary, request the Court to do so. However, the Parties will work together to remedy any conditions which the Court does not approve.

4.    **Settlement Sum and Allocation:**  The Plaintiffs and their counsel will have the right to, as consideration for the settlement of this Lawsuit, ████████

████████████████████████████████████████████ (the "**Settlement Payment**").
The Settlement Payment shall be divided as follows:

      a.    ████████ of the Settlement Payment shall be paid to Plaintiffs' counsel for their attorneys' fees and costs;

      b.    ████████ which is the remaining amount of the settlement Payment after attorneys' expenses, represents the maximum payment for wages and liquidated damages to Plaintiffs. This amount will be divided *pro rata* among all Plaintiffs according to Exhibit B attached hereto and incorporated herein by reference ("Settlement Allocation"). Exhibit B is the amount recovered by each Plaintiff according to the claims made in this case and is based on payroll and other records produced by Defendant. This amount also includes a ███████ service award for the Representative Plaintiff.

5.    **Release.**

      a.    **General Release by Representative Plaintiff Only:** In exchange for the considerations recited in Section 4 of this Agreement, the Representative Plaintiff hereby irrevocably and unconditionally releases and forever discharges, and covenants not to sue or bring any other legal action against the Company which the Representative Plaintiff has or which could be asserted on his behalf by any person, government authority, or entity, resulting from or relating to any act or omission of any kind occurring on or before the date of the execution of this Agreement. The Representative Plaintiff understands and agrees that this Release includes, but is not limited to, the following claims and causes of action resulting from or relating to acts or omissions on or before the date of the execution of this Agreement:

      **(1)**    All claims and causes of action arising under the FLSA, or other local, state, or federal laws relating to wage and hour compensation up to the execution of this Agreement, including, but not limited to, alleged claims of unpaid wages and all derivative claims under the Employee Retirement and Income Security Act, 29 U.S.C. §§ 201, et. sec., any claim for unpaid compensation, overtime compensation, commissions, bonuses, or other incentive compensation, liquidated damages, and attorneys' fees.

      **(2)**    All claims and causes of action arising under contract, tort, or other common law, including, without limitation, breach of contract, promissory estoppel, detrimental reliance, wrongful discharge, discrimination on the basis of race, sex, age, national origin, religion, disability or any other characteristic protected under federal or state law, retaliation, failure to accommodate, negligence, gross negligence, negligent hiring, negligent supervision, negligent retention, false imprisonment, assault and battery, intentional infliction of emotional distress, slander, libel, fraud, misrepresentation, and invasion of privacy;

(3)     All claims and causes of action arising under any federal, state, or local law, regulation, or ordinance, including, without limitation, the Sarbanes-Oxley Act, as amended, Dodd Frank Wall Street Reform and Consumer Protection Act, Title VII of the Civil Rights Act of 1964, as amended, Age Discrimination in Employment Act, as amended, the Civil Rights Act of 1991, the Family and Medical Leave Act of 1993, and the Americans with Disabilities Act of 1990, as amended;

(4)     All claims and causes of action for past or future loss of pay or benefits, expenses, damages for pain and suffering, emotional distress damages, liquidated damages, punitive/exemplary damages, compensatory damages, attorney's fees, interest, court costs, physical or mental injury, damage to reputation, damage to credit, and any other injury, loss, damage or expense or any other legal or equitable remedy of any kind whatsoever;

(5)     All claims and causes of action arising out of or in any way connected with, directly or indirectly, the Representative Plaintiff's service contract with the Company, including, without limitation, the Company's treatment of him, the terms and conditions of his services contract, the termination of his services contract, or the compensation, benefits or payments received or that should have been received during or subsequent to his services contract except any future claims relating to COBRA and/or retirement benefits; and

(6)     All claims and causes of action of any kind or character relating to his services contract with the Company which could have been alleged in any lawsuit or administrative charge, claim, or proceeding that could have been filed against the Company by the Representative Plaintiff, on his own behalf or on behalf of any other person.

(7)     Notwithstanding anything to the contrary in this Agreement, this release does not constitute a release or waiver of any claim by the Representative Plaintiff (i) for unemployment or workers' compensation, (ii) for vested rights under ERISA-covered employee benefit plans as applicable on the date the Representative Plaintiff signs this Agreement, or (iii) that may arise after the Representative Plaintiff signs this Agreement. Further, and notwithstanding anything to the contrary in this Agreement, this release does not constitute a release or waiver of the Representative Plaintiff's right to file a charge or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission ("EEOC") or any other governmental entity with jurisdiction to regulate employment conditions or relations; however, the Representative Plaintiff does release and relinquish any right to receive any money, property, or any other thing of value from the Company as a result of any proceeding of any kind or character initiated by the EEOC or any other governmental entity with jurisdiction to regulate employment conditions or relations.

      b.    **Release As To All Opt-in Plaintiffs.**  In exchange for the considerations recited in Section 4 of this Agreement, each Opt-in Plaintiff who filed a consent form in this case (Bryan Cigales, Dwayne Clements, Shaun Hughes, Jeff Perkins, Robert Wilson, William "Boyd" Wilson, Jeffrey "Jeff" Wilson, Timothy Slone, Sherman Henderson, Robert Camp, William Beane) does hereby and forever release, acquit, and discharge the Company, which includes its attorneys and past, present, and future divisions, affiliates, predecessor, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, and privies from any and all wage and hour claims, causes of actions, demands, debts, obligations, damages or liability, known or unknown, which concern or relate in any way to the payment of wages or bonuses or any other form of compensation under the FLSA or any other federal, state or local wage-and-hour law and any and all claims for retaliation under the FLSA or state wage–and–hour statutes, whether those claims exist, or allegedly exist, at law or in equity under the common law, contract law, statutory law, the Fair Labor Standards Act, 29 U.S.C. §§201, et seq., and state wage laws, as well as any and all derivative claims under the Employee Retirement Income Security Act, 29 U.S.C. §§201, et seq. The released claims are intended to include any and all claims that were raised in the Lawsuit, and any and all claims for attorneys' fees, costs, and expenses and the like, including but not limited to, any claims for attorneys' fees related to services rendered by the Plaintiffs' Counsel of record in the Action and/or any other counsel who has provided services to the Plaintiffs.

6.    **Settlement Payment Procedure and Individual Release:**

      a.    Within 7 days following Court approval of the settlement of this Lawsuit, the Company shall provide one check to Plaintiffs' counsel for attorneys' fees and costs in the amount set forth in Sections 4(a) and 4(b).  An IRS Form 1099 will be issued to Plaintiffs' counsel for payment of their attorneys' fees, costs, and expenses as set forth in Section 4(a) of this Agreement.

      b.    Each Plaintiff shall receive a Settlement check(s) which will include a wage and a non-wage component.  All checks to Plaintiffs must be delivered to Plaintiffs' counsel within 7 days of Court approval of the Settlement. Plaintiffs' counsel shall hold the checks in trust until the conditions for receiving the checks are satisfied, as described herein.

      c.    Each Plaintiff who receives a Settlement Check must complete an IRS Form W-9, and return it Plaintiffs' counsel.  An IRS Form W-9 is a condition precedent to any Plaintiff's right to a Settlement Check.  The Company shall report and provide each taxing authority with appropriate notice of the payment amounts and shall issue to each Plaintiff who receives a Settlement Check for wages an IRS Form 1099.

      d.    Counsel for Plaintiffs shall promptly deliver all IRS Form W-9s to counsel for the Company.

e.    The individual settlement checks will contain the following printed statement: "Receipt of this check is a full and final release."

7.    **Tax Issues and Indemnification:**  Each Plaintiff releases the Company from, and agrees to assume full responsibility to, any federal, state or local taxing authorities for any tax consequences of the Company under this Agreement except for proper withholding and payment of employment taxes. **EACH PLAINTIFF COVENANTS AND AGREES TO INDEMNIFY AND HOLD HARMLESS THE COMPANY FROM AND AGAINST ANY TAXES, FINES, PENALTIES, INTEREST, SUITS, CLAIMS, DEMANDS, LIENS, PROCEEDINGS, AND ANY OTHER LIABILITY ARISING OUT OF SUCH TAX CONSEQUENCES.** Each Plaintiff acknowledges and agrees that the Company and its legal counsel have made no representations regarding the proper tax treatment of the payments set forth in Sections 4 and 6 of this Agreement. Plaintiffs do not indemnify the Company for any tax consequences arising out of the Company's obligations to collect and forward payroll withholding taxes to the IRS or any other tax authority.

8.    **Terms of Settlement and Representation by Counsel:**  All of the Parties acknowledge that they have been appropriately and adequately represented by counsel throughout all negotiations which preceded the execution of this Agreement and that this Agreement has been executed with the consent and the advice of such counsel.

9.    **Nonadmission:**  The Parties acknowledge and agree that liability for the actions which are the subject matter of this Agreement is disputed by the Parties.  The Parties agree that this Agreement represents a fair and reasonable settlement of this bona fide dispute as to the facts and the law that apply to this matter.  This Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Parties to this Agreement.  The Parties further acknowledge and agree that this Agreement, the settlement, and any part of the negotiations shall not be used to suggest an admission of liability in any dispute the Parties may have now or in the future with respect to any person or entity.

10.    **Confidentiality:**  All Parties, including the Representative Plaintiff, agree not to disclose, disseminate or publicize, and will not cause to be disclosed, disseminated or publicized, any of the terms of this Agreement or the negotiations among the Parties concerning the terms or any proposed terms of the Agreement, or the existence of this Agreement, including but not limited to the Settlement Payment or Settlement Allocation, to any person other than his spouse, legal counsel, and tax advisors, except (1) as may be required by law; (2) to the extent necessary to report income to appropriate taxing authorities, or (3) in response to an order or subpoena of a court or government agency of competent jurisdiction. However, notice of receipt of such an order or subpoena shall be immediately communicated to Peyton Craig, Attorney, Ovintiv USA Inc. (281)-210-5411, so that it shall have an opportunity to intervene and assert what rights it has to nondisclosure prior to the Plaintiff's response to such order or subpoena.  The Company shall immediately report notice of receipt of such an order or subpoena to Plaintiffs' counsel.

11.    **Modification of Agreement:**  This Agreement may not be modified or amended except in writing, signed by the respective counsel of record for the Parties. This agreement must be approved in its entirety and without modifications to be effective.

12.     **Further Cooperation:**  The Parties and their respective counsel shall proceed diligently to prepare and execute all documents, to seek the necessary Court approval(s), and to do all things reasonably necessary or convenient to consummate the Agreement and settlement as expeditiously as possible.

13.     **Entire Agreement**: This Agreement constitutes the entire agreement between the Parties and supersedes all prior agreements and understandings, oral or written, relating to the subject matter of this Agreement.  Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms.  This Agreement shall not be modified, amended or terminated unless such modification, amendment or termination is executed as required by Section 11 above.

14.     **Construction:**  This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any Party, regardless of who drafted or who was principally responsible for drafting this Agreement, or any specific term or condition thereof.  The Plaintiffs and the Company participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel.  As such, neither the Plaintiffs nor the Company may claim that any ambiguity in this Agreement should be construed against the other.

15.     **Enforcement:**  This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Texas, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, or, in the event the choice of Texas law is deemed inapplicable, in accordance with U.S. federal law.  The application of the laws of the State of Texas, or U.S. federal law if Texas law is deemed inapplicable, shall exclude in all cases any choice of law or conflict of law rules or provisions (whether of the State of Texas or any other jurisdiction) that may direct or would cause the application of the laws of any other state, country or jurisdiction.

16.     **Execution of Agreement**: The Parties agree that this Agreement shall be executed in multiple original counterparts, each having the same force and effect as if all Parties executed a single instrument.

17.     **Binding Effect/Nonassignment and Indemnification:**   This Agreement is binding upon and shall inure to the benefit of the Parties to this Agreement, as well as their respective attorneys, and past, present and future divisions, affiliates, predecessor, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, and privies.

    a.      Each Plaintiff agrees that this Agreement is and shall be binding on him, his children, heirs, executors, administrators, bankruptcy trustees, and all other persons and entities in privity with or who may bring suit on behalf of each Plaintiff.

    b.      Each Plaintiff agrees to indemnify and hold the Company harmless from any further claim or suit (including but not limited to any attorneys' fees and other expenses incurred in the defense of any such claim or suit or any bankruptcy proceedings) by or on behalf of such Plaintiff, his children, heirs, executors,

administrators, bankruptcy trustees, or any other person or entity in privity with or who may bring suit on behalf of such Plaintiff concerning any matter released by this Agreement. Defendant shall first make presentment of any claim under this section 17 to the offending Plaintiff and Plaintiffs' counsel identified below prior to incurring attorney's fees or costs in order to give Plaintiffs the opportunity to defend the claims

**18**    **Attorney Fees, Costs Expenses:** Except as otherwise specifically provided herein, the Parties shall bear responsibility for their own attorneys' fees, costs, and expenses, taxable or otherwise, incurred by them or arising out of this litigation and shall not seek reimbursement thereof from any Party to this Agreement.

**19**    **Authority of Counsel:** Counsel for the Plaintiffs, identified below, warrant and represent that they are expressly authorized by the Plaintiffs to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms. Counsel for the Company warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by the Company pursuant to this Agreement in order to effectuate its terms.

**20.**    **Counterparts:** This Agreement may be executed in counterparts, each of which shall constitute an original, and which together shall constitute a single instrument. The Parties further agree that signatures to this Agreement transmitted electronically or via facsimile shall be valid and binding.

NRF 3.6

REPRESENTATIVE PLAINTIFF

**ACCEPTED AND AGREED:**

_____
Morgan Buffington (Mar 29, 2023 12:25 CDT)
Morgan Buffington

Mar 29, 2023
_____
Date

**<u>DEFENDANT:</u>**

**ACCEPTED AND AGREED:**

_____
Aaron Carlson
Vice President –
Corporate Legal, Securities and Compliance
Ovintiv USA Inc.

3 – 23 – 23
_____
Date

<u>APPROVED AS TO FORM BY:</u>

_Richard M. Schreiber_
Richard M. Schreiber (Mar 29, 2023 13:01 CDT)
Richard Schreiber
Attorney for Plaintiffs

Mar 29, 2023
_____
Date

_____
M. Carter Crow
Attorney for Defendants

3 – 21 – 23
_____
Date

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO. 1:20-cv-02477

MORGAN BUFFINGTON, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

OVINTIV USA INC. and NEWFIELD
EXPLORATION COMPANY, INC.,

      Defendants.

---

**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT**

---

Plaintiff Morgan Buffington ("Plaintiff" or "Buffington"), on behalf of himself and on behalf of all other Opt-in Plaintiffs, and Ovintiv USA Inc. and Newfield Exploration Company, Inc. ("Defendants") file this Joint Motion to Approve Settlement Agreement. Because Plaintiffs' claims arise under the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), the Court must approve the parties' settlement agreement. In support of their motion, the Parties show the Court as follows:

**1.    Summary**

The Parties are pleased to announce they have entered into a Confidential Settlement Agreement and Release of All Claims ("Confidential Settlement") with respect to this FLSA case. The Confidential Settlement was reached after protracted litigation and several candid

discussions. If approved, the gross settlement will provide the

## 2. The Settlement is Fair and Reasonable Resolution of a Bona Fide Dispute.

The Court should approve the Parties' Confidential Settlement because it is fair and reasonable. In determining whether a settlement agreement is fair and reasonable, this Court considers "(1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016). The balance of these factors weigh in favor of approving the Confidential Settlement, particularly in light of the Court's policy of encouraging settlement of litigation. *See id.*

### i. *The Confidential Settlement Agreement was Fairly and Honestly Negotiated.*

The precise terms of the Confidential Settlement are filed under seal with the Court. The Confidential Settlement was the product of honest and fair negotiations between experienced counsel and has the salutary effect of (1) providing substantial relief to Buffington and the Opt-in Plaintiffs and (2) eliminating the inherent risks both sides would bear if this complex litigation continued to a resolution on the merits. Such negotiations allowed the parties to bridge the significant gap between the parties' settlement positions and obtain the resolution described.

Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Pliego*, 313 F.R.D. at 130 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Lynn's Food Stores, Inc.* v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (same). Moreover, the Confidential Settlement reflects a reasonable comprise that adequately compensates Plaintiffs for their alleged injuries under the FLSA. *See Pliego*, 313 F.R.D. at 130 ("To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales.").

### ii.      *The Parties Agree that the Confidential Settlement is Fair and Reasonable.*

The Parties are in agreement that the Confidential Settlement is fair and reasonable and jointly file this Motion.

### iii.     *Serious Questions of Law and Fact Existed Between the Parties.*

The parties disagree about the merits of Buffington's claims, the viability of Defendants' defenses, and the proper calculation of damages. If Plaintiffs' allegations were ultimately correct, Defendants could be faced with the prospect of a monetary judgment in favor of Named Plaintiff Buffington and potentially the Opt-in Plaintiffs, as well as an obligation to pay the litigation fees and costs incurred by Buffington. If Defendants' arguments were correct, then Buffington and potentially the Opt-in Plaintiffs would not recover or their recovery would be substantially less than what Buffington and the Opt-in Plaintiffs sought. The Parties on both sides were represented by able counsel throughout this litigation. Each side has substantial arguments in support of their legal position on issues such as whether Buffington and the Opt-in Plaintiffs were properly classified as independent contractors and whether Buffington and the

Opt-in Plaintiffs would be able to establish a willful violation of the FLSA extending the statute of limitations from two years to three years. Accordingly, the Court should readily conclude a bona fide dispute between the parties existed under the FLSA.

**iv.    *The Confidential Settlement Outweighs the Potential Benefits of Any Future Litigation.***

The Confidential Settlement is also fair and reasonable because substantial obstacles exist if litigation continues and the settlement provides substantial and immediate relief. Without settlement, the parties would have engaged in extensive discovery, including depositions of key management witnesses, and litigated dispositive motions on the merits of the claims and defenses. "Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial." *Pliego*, 313 F.R.D. at 131. Even if Buffington and the Opt-in Plaintiffs had prevailed on the merits by summary judgment or trial, an appeal to the Tenth Circuit would have likely resulted. Under such a scenario, Buffington and the Opt-in Plaintiffs would not see any monetary relief from this case, if any, until years from now. The Settlement Agreement brings immediate benefit to Buffington and the Opt-in Plaintiffs.

**v.    *The Amount of Attorneys' Fees is Fair and Reasonable.***

The FLSA mandates payment of attorneys' fees to prevailing plaintiffs. 29 U.S.C. § 216(b); *see also Hartley v. Time Warner NY Cable LLC*, No. 1:13-cv-00158, 2014 WL 4437282, at *1 (D. Colo. Sept. 9, 2014) (noting that the Court should only approve a FLSA settlement if it contains "a reasonable award of attorneys' fees"). As part of the Confidential Settlement, the Parties have agreed that Plaintiffs' Counsel is entitled to approximately 40% of the gross

settlement amount for fees and reimbursement for costs. This is the agreement that the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) (noting that, even in the more exacting Rule 23 context, "the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.").

Such fees are justified as a matter of contract, but especially in this case where counsel worked diligently on a contingency basis. Within the Tenth Circuit, contingency fees for class action recoveries customarily range between 30% and 50%. *See, e.g., Howard v. J&A Services, L.L.C.*, No. 1:12-cv-02987, Dkt. No. 96 (D. Colo. Apr. 8., 2014) (awarding 40% contingency fee plus litigation expenses in FLSA collective action); *Vaszlavik v. Storage Technology Corp.*, No. 1:19-cv-02525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (noting that a contingency fee award "in the middle of the ordinary 20%–50% range is presumptively reasonable"); *Whittington v. Taco Bell of Am., Inc.*, No. 1:10-cv-01884, 2013 WL 6022972, at *6 (D. Colo. 2013) (approving a contingency fee and expense award totaling 39% of the total settlement fund in FLSA class action); *Cimarron Pipeline Const., Inc. v. National Council on Compensation Ins.*, No. 5:89-cv-01186, 1993 WL 355466, at *2 (W.D. Okla. 1993) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis").

Here, Buffington and the Opt-in Plaintiffs were aware of, and agreed to, the contingency fee nature of the relationship. This litigation posed substantial risk for both Plaintiffs and Plaintiffs' counsel alike. The terms of the settlement have been approved by Buffington, his counsel, Defendants, and their counsel. Buffington entered into the Settlement Agreement

voluntarily and knowingly, and understands fully that he is relinquishing his claims in this matter in exchange for the agreed upon settlement. Further, all Opt-In Plaintiffs will receive a *pro rata* share of their larger portion of the total settlement. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

**3.      Joint Motion to File Settlement Agreement Under Seal.**

The Parties further agree that as a condition of settlement, the terms of the Confidential Settlement will be kept confidential. Accordingly, the Parties are filing the Confidential Settlement under seal as Exhibit 1 hereto. The Parties jointly request that the Court keep the terms of the Confidential Settlement and the Confidential Settlement itself confidential, and the parties respectfully request that the Confidential Settlement not be included in the documents and papers publicly filed in this matter. Counsel for the parties will make themselves available for a conference regarding the Confidential Settlement at the Court's request.

**4.      Conclusion.**

The Parties and their counsel agree that the Confidential Settlement is a reasonable compromise of the claims alleged by the Plaintiffs in light of the procedural posture of the case, the risks involved in litigation, and the costs applicable to both sides. The Parties engaged in extended negotiations regarding the terms of the Confidential Settlement. Because the Confidential Settlement is a reasonable compromise and adequately compensates Plaintiffs for the unpaid overtime hours they allege to be owed, the Parties seek entry of the enclosed Agreed Order of Approval.

Respectfully submitted,

JOSEPHSON DUNLAP
BRUCKNER BURCH P.L.L.C

/s/ Richard M. Schreiber w/p MCC
**Michael A. Josephson**
Texas State Bar No. 24014780
**Andrew W. Dunlap**
Texas State Bar No. 24078444
**Carl A. Fitz**
Texas State Bar No. 24105863
**Richard Schreiber**
Texas State Bar No. 24056278
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713.352.1100 (Telephone)
713.352.3300 (Fax)

-and-

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
Federal ID No. 21615
BRUCKNER BURCH, P.L.L.C
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713.877.8788 (Telephone)
713.877.8065 (Fax)

Attorney for Plaintiffs

NORTON ROSE FULBRIGHT US LLP

/s/ Carter Crow

M. Carter Crow
Andrew Yeh
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:    (713) 651-5151
Facsimile:    (713) 651-5246
carter.crow@nortonrosefulbright.com
bill.leone@nortonrosefulbright.com
fazila.issa@nortonrosefulbright.com
andrew.yeh@nortonrosefulbright.com

*Counsel for Defendants Ovintiv USA Inc. and
Ovintiv Exploration Inc.*

## CERTIFICATE OF SERVICE

This pleading was served on the following opposing counsel via the Court's CM/ECF

service in compliance with Rule 5 of the Federal Rules of Civil Procedure on March __, 2023.

**Counsel for Plaintiff:**
Michael Josephson
Andrew Dunlap
Richard M. Schreiber
Josephson Dunlap Law Firm
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch
Bruckner Burch PPLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:  (713) 877-8788
Facsimile:  (713) 877-8065
rburch@brucknerburch.com

_/s/_ **Andrew Yeh**
Andrew Yeh

**Exhibit 1**

# Exhibit B

| Name | Settlement Amount | Identifying Factor (SSN) |
|---|---|---|
| William Boyd Wilson | | |
| Bryan Cigales | | |
| Dwayne Clements | | |
| Jeff Perkins | | |
| Jeff Wilson | | |
| Morgan Buffington | | |
| Robert Camp | | |
| Robert Wilson | | |
| Shaun Hughes | | |
| Sherman Henderson | | |
| Timothy Slone | | |
| William Beane | | |